UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**                                    JS-6

| Case No. | 2:13-cv-07532-CAS; consolidated with 2:13-cv-07200-CAS | Date | November 25, 2013 |
|---|---|---|---|
| Title | IN RE: HASSEN IMPORTS PARTNERSHIP | | |
| | Bankruptcy No. 2:11-bk-42068 ER | | |

Present: The Honorable    CHRISTINA A. SNYDER

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiff:              Attorneys Present for Defendant:

Not Present                                        Not Present

**Proceedings:**        **(In Chambers:)** APPEAL FROM BANKRUPTCY COURT

## I. INTRODUCTION

On July 27, 2011, debtor Hassen Imports Partnership ("HIP") filed a voluntary Chapter 11 bankruptcy petition.  On January 2, 2013, the bankruptcy case was converted to Chapter 7, and a trustee was appointed to manage the estate.

On August 21, 2013, appellant City of West Covina ("the City") filed a "Motion to Enforce Covenants and Contractual Interests in Property" in bankruptcy court.  In this motion, the City sought to prevent the trustee from selling a number of properties owned by HIP to Dighton America, Inc. ("Dighton").  In particular, the City argued that the order authorizing the proposed sale improperly provided for a sale free and clear of certain contracts and covenants previously entered into between HIP and the City.  On September 11, 2013, the bankruptcy court denied the City's motion.  See Joint Appendix ("JA") Ex. 22 ("Covenant Order").  The bankruptcy court subsequently issued an order authorizing the trustee to sell the properties to Dighton free and clear of the City's contractual and covenant interests.

On October 11, 2013, the City appealed the bankruptcy court's ruling to this Court, and moved in the bankruptcy court for an order staying the sale of the properties.  On October 21, 2013, after the bankruptcy court denied the City's motion for a stay pending appeal, the City moved ex parte for this Court to stay the bankruptcy court's order authorizing the sale. On October 22, 2013, the Court granted the City's motion for stay.  After a hearing on October 30, 2013, the Court extended the stay pending resolution of this appeal, and set forth an expedited briefing schedule.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

| | **CIVIL MINUTES - GENERAL** | | | **JS-6** |
|---|---|---|---|---|
| Case No. | 2:13-cv-07532-CAS; consolidated with 2:13-cv-07200-CAS | Date | November 25, 2013 | |
| Title | IN RE: HASSEN IMPORTS PARTNERSHIP | | | |

On November 13, 2013, the parties filed simultaneous opening briefs.  On November 20, 2013, the parties filed simultaneous reply briefs.  After considering the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

### A. The West Covina Auto Mall Properties

Although the history of both the properties and HIP's relationship with the City of West Covina is convoluted as well as lengthy, the basic facts central to resolution of this appeal are as follows.  Beginning in the early 1980s, and extending into the 1990s, the Redevelopment Agency of the City of West Covina conveyed several properties within the West Covina Auto Mall to debtor HIP.  These properties include the "Ford Property," located at 2000 East Garvey Avenue South, West Covina, CA, the "Chevrolet Property," located at 1932 East Garvey Avenue South, West Covina, CA, and the "Hummer Property," located at 1900 East Garvey Avenue South, West Covina, CA.  Joint Statement of Facts on Appeal ("JS") ¶¶ 10, 16, 17.  HIP, together with West Covina Motors ("WCM"), operated these properties as automobile dealerships.  Both HIP and WCM, along with appellee Dighton, are controlled by an individual named Ziad Alhassen.  JS ¶¶ 1, 2, 6.

Throughout the mid-1990s and early 2000s, HIP entered into several separate financing and redevelopment agreements with the Redevelopment Agency.  As relevant here, on October 29, 1999, the redevelopment agency entered into a Second Amended Restated Disposition, Development and Owner Participation Agreement ("Second ARDDOPA") with HIP and WCM.  JS ¶ 23.  Portions of this agreement were recorded in the Official Records of Los Angeles County on November 10, 1999.  JS ¶ 24, 25.

The Second ARDDOPA provided, in pertinent part, that in consideration for the Redevelopment Agency's financing, HIP agreed to enter into several covenants governing use of the properties.  First, the "Ownership Covenant" gave the Agency the right to approve or disapprove of any future owner of the properties.  JA 666.  Second, the "Operating Covenant" gave the Redevelopment Agency the right to approve or disapprove of any future operator of auto dealerships on the properties.  JA 689-91.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

| | **CIVIL MINUTES - GENERAL** | | | **JS-6** |
|---|---|---|---|---|
| Case No. | 2:13-cv-07532-CAS; consolidated with 2:13-cv-07200-CAS | Date | November 25, 2013 | |
| Title | IN RE: HASSEN IMPORTS PARTNERSHIP | | | |

Third, the "Use Covenant" required the properties to be used solely for automobile-related purposes.  JA 689.

### B. Proceedings Below

On July 27, 2011, HIP filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  JS ¶ 35.  The case was subsequently converted to Chapter 7, and Howard M. Ehrenberg was appointed as trustee in bankruptcy to manage the estate.  On August 21, 2013, the trustee moved for an order authorizing sale of the property free and clear of the covenants and contractual interests set forth in the Second ARDDOPA.  JS ¶ 50.  That same day, the City, as successor in interest to the Redevelopment Agency, filed a motion to enforce those same convenants and contractual interests.  JS ¶ 51.  In particular, the City feared that any auction of the properties would be won by Dighton, which, like HIP and WCM, is controlled by Ziad Alhassen.  The City averred that its long history of dealing with Alhassen had left it unwilling to countenance his further involvement in the West Covina Auto Mall.  Accordingly, the City wished to invoke its contractual and covenant rights to preclude Dighton from owning and operating the properties.  JA 416-22.

On September 12, 2013, the bankruptcy court denied the City's motion to enforce. Applying California property law, the bankruptcy court found, among other things, that the Ownership Covenant was not enforceable as a (1) contractual interest, (2) real property covenant, or (3) equitable servitude.  Covenant Order at 9-11.  Similarly, the bankruptcy court found that the Operating Covenant was not enforceable as a real property covenant.  Id. at 13.  However, the bankruptcy court also found that the Operating Covenant was enforceable as an equitable servitude.  Id.  Notwithstanding this finding, the bankruptcy court concluded that the trustee could sell the properties free and clear of this equitable servitude pursuant to 11 U.S.C. § 363(f)(5).  Id. at 16-17.

After denying the City's motion to enforce, the bankruptcy court proceeded to auction the properties.  Dighton won the auction, and on October 8, 2013, the bankruptcy court authorized a sale to Dighton free and clear.  JA 1381.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

| | **CIVIL MINUTES - GENERAL** | | | **JS-6** |
|---|---|---|---|---|
| Case No. | 2:13-cv-07532-CAS; consolidated with 2:13-cv-07200-CAS | Date | November 25, 2013 | |
| Title | IN RE: HASSEN IMPORTS PARTNERSHIP | | | |

## III. LEGAL STANDARD

Federal Rule of Bankruptcy Procedure 8013 provides:

> On appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

U.S.C. Bankr. R. 8013.  A "finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  United States. v. United States Gypsum Co., 333 U.S. 364, 395 (1948).  Questions of law are reviewed de novo.  In re Luna, 122 B.R. 575, 576 (9th Cir. BAP 1991).

## IV. DISCUSSION

The Court finds and concludes that the sale order should be reversed.  The Court reaches this conclusion for the following reasons.  First, the bankruptcy court correctly found that the Operating Covenant was enforceable as an equitable servitude.  Second, the bankruptcy court erred by construing 11 U.S.C. § 363(f)(5) to authorize a sale free and clear of this equitable servitude.  Accordingly, because the sale order erroneously applies § 363(f)(5) to extinguish an enforceable equitable servitude, the Court finds that the sale order must be reversed.  As this conclusion is sufficient to decide the appeal, the Court need not address the other issues raised by the City.[1]  "[I]f it is not necessary to decide more, it is necessary not to decide more."  PDK Labs., Inc. v. Drug Enforcement Admin., 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in judgment).

---

[1] In particular, the Court does not address the City's various arguments that the bankruptcy court misapplied California property law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**                          **JS-6**

| Case No. | 2:13-cv-07532-CAS; consolidated with 2:13-cv-07200-CAS | Date | November 25, 2013 |
|---|---|---|---|
| Title | IN RE: HASSEN IMPORTS PARTNERSHIP | | |

### A. The Operating Covenant

The Court first turns to the bankruptcy court's finding that the Operating Covenant is enforceable against the trustee as an equitable servitude. The Court begins here because, if the City's covenant interests are not enforceable against the trustee, then the trustee may sell the Auto Mall properties to Dighton without having to invoke 11 U.S.C. § 363(f) to extinguish those interests. As the bankruptcy court below explained, 11 U.S.C. § 544(a)(1) treats the trustee as a bona fide purchaser for value of the properties, and, as a bona fide purchaser, the trustee may sell property free and clear of unenforceable prior interests. See Miller & Starr, 5 Cal. Real Est. § 11:58 (3d ed.) ("The bona fide purchaser can convey to a successor who also takes title free and clear of the prior interest."); accord Jones v. Indep. Title Co., 23 Cal. 2d 859, 861(1944).

Here, the bankruptcy court determined that the Operating Covenant was enforceable against the trustee as an equitable servitude. In reaching this conclusion, the bankruptcy court applied the test for equitable servitudes set forth by In re Snow, 201 B.R. 968 (Bankr. C.D. Cal. 1996).[2] Under In re Snow, an equitable servitude is

---

[2] The Court notes that the two-pronged test set forth in In re Snow may not capture the full complexity of the California law of servitudes. Miller & Starr's treatise on California property, for example, states that "the principle established under the law of covenants, that the covenant must 'touch and concern the land,' has not been directly required in the leading cases relying on the doctrine of equitable servitudes." 8 Cal. Real Est. § 24:9 (3d ed.) (footnotes omitted); see also id. ("The primary focus of the decisions, however, has not been on the nature of the covenant but on whether the intent of the parties was for a common plan and whether the successors of the covenantor burdened by the restriction have notice of the restriction."). Similarly, the California Supreme Court in Nahrstedt v. Lakeside Vill. Condo. Assn. "distill[ed] these principles: An equitable servitude will be enforced unless it violates public policy; it bears no rational relationship to the protection, preservation, operation or purpose of the affected land; or it otherwise imposes burdens on the affected land that are so disproportionate to the restriction's beneficial effects that the restriction should not be enforced." Nahrstedt v. Lakeside Vill. Condo. Assn., 8 Cal. 4th 361, 382 (1994).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

| | **CIVIL MINUTES - GENERAL** | | | **JS-6** |
|---|---|---|---|---|
| Case No. | 2:13-cv-07532-CAS; consolidated with 2:13-cv-07200-CAS | Date | November 25, 2013 | |
| Title | IN RE: HASSEN IMPORTS PARTNERSHIP | | | |

enforceable against a subsequent purchaser if (1) the "successor [has] notice of the equitable interest at the time that the successor obtains an interest in the property," and (2) the equitable servitude "touches and concerns" the land that it burdens. Id. at 973. The parties appear to agree that In re Snow correctly articulates the standard for equitable servitudes under California law. See Appellant's Opening Br., at 20-21; Appellees' Opening Br., at 10.

Applying this standard, the bankruptcy court first found that the trustee had notice of the Operating Covenant. As a hypothetical bona fide purchaser for value under § 544(a)(1), the trustee is "deemed to have conducted a title search," and thus be on constructive notice of all documents recorded prior to the commencement of the case. 5 Collier on Bankruptcy ¶ 544.05. Here, the bankruptcy court found that the Operating Covenant was recorded on November 10, 1999, in the "Agreement to be Recorded" that accompanied the execution of the second ARDDOPA. See JA 802. Accordingly, because the Operating Covenant was recorded prior to the commencement of the bankruptcy case, the bankruptcy court found that the trustee had constructive notice of the Operating Covenant. The Court agrees. Not only is the bankruptcy court's finding of fact entitled to deference, but the record also shows it to be correct. See JA 804 ¶ 3. In any event, appellees do not appear to dispute that the trustee had constructive notice of the Operating Covenant.

Second, the bankruptcy court concluded that the Operating Covenant "touched and concerned" the properties. "While difficult to define, generally the concept [of touch and concern] has been applied to require that performance of the promise be related to the occupancy of the promisor's land, and that the receipt of the benefit be tied to the promisee's land." In re Snow, 201 B.R. at 973. Here, the bankruptcy court found that the

---

These complexities notwithstanding, the Court will analyze the enforceability of the Operating Covenant as an equitable servitude under the two-pronged test of In re Snow, for two reasons. First, because the trustee and Dighton both indisputably have notice of the Operating Covenant, it does not appear that applying these alternative standards would lead to a different result. Second, as discussed below, both appellant and appellees treat In re Snow as the governing standard.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

| **CIVIL MINUTES - GENERAL** | | | | **JS-6** |
|---|---|---|---|---|
| Case No. | 2:13-cv-07532-CAS; consolidated with 2:13-cv-07200-CAS | | Date | November 25, 2013 |
| Title | IN RE: HASSEN IMPORTS PARTNERSHIP | | | |

Operating Covenant touched and concerned the properties because "it relates to the use of the Auto-Mall property."  Covenant Order at 13.

Appellees do not object to this conclusion so much as they interpret it narrowly. Appellees read the Covenant Order as finding that the Operating Covenant only touches and concerns the land insofar as the Operating Covenant requires the properties to be used for automobile-related purposes.  See Appellees' Opening Brief, at 10; Appellees' Reply Brief, at 6.  Accordingly, appellees reason that the portion of the Operating Covenant giving the City the right to approve of future operators of the properties does not touch and concern the land, and is thus not enforceable as an equitable servitude.

The Court finds this contention unpersuasive, for two reasons.  First, appellees misread the bankruptcy court's Covenant Order.  In finding that the Operating Covenant touched and concerned the properties because "it relates to the use of the Auto-Mall property," the Covenant Order did not simply conclude that the "use" portion of the Operating Covenant touched and concerned the land.  Instead, the bankruptcy court found that the Operating Covenant—which the bankruptcy court previously defined to include the City's right to approve of subsequent operators of the properties—touched and concerned the land.  Indeed, if the bankruptcy court had found that the City's right to approve of future operators did not run with the land, there would have been no need for the bankruptcy court to authorize a sale free and clear of that right pursuant to § 363(f)(5).

Second, and more importantly, the Operating Covenant does touch and concern the land.  The Operating Covenant gives the City the right to approve or disapprove of future operators of the property.  The performance of this promise—i.e., not having anyone operate a dealership on the land without the city's approval—"relate[s] to the occupancy of the promisor's land."  In re Snow, 201 B.R. at 973.  Similarly, "the receipt of the benefit [is] tied to the promisee's land," id., because the Operating Covenant guarantees that the properties be integrated into the larger West Covina Auto Plaza site.  See JA 803.

Accordingly, because the trustee had constructive notice of the Operating Covenant, and the Operating Covenant touches and concerns the land, the Court affirms the bankruptcy court's finding that the Operating Covenant is enforceable against the trustee.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**                    JS-6

| Case No. | 2:13-cv-07532-CAS; consolidated with 2:13-cv-07200-CAS | Date | November 25, 2013 |
|----------|--------------------------------------------------------|------|-------------------|

| Title | IN RE: HASSEN IMPORTS PARTNERSHIP |
|-------|-----------------------------------|

### B. Sale Free and Clear Pursuant to § 363(f)(5)

Having determined that the bankruptcy court correctly found that the Operating Covenant was an enforceable equitable servitude, the Court now turns to the bankruptcy court's application of § 363(f)(5) to extinguish that interest. Section 363(f) authorizes a bankruptcy trustee to "sell property . . . free and clear of any interest in such property of an entity other than the estate, only if . . . (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest."

The leading case in this circuit interpreting § 363(f)(5), In re PW, LLC, 391 B.R. 25, 41 (B.A.P. 9th Cir. 2008), "parse[s] this paragraph to contain at least three elements: that (1) a proceeding exists or could be brought, in which (2) the nondebtor could be compelled to accept a money satisfaction of (3) its interest." Id. at 41.[3] The first prong in particular requires the trustee "to identify a qualifying proceeding under nonbankruptcy law . . . that would enable them to strip" the interest by compelling a money satisfaction. Id. at 47. Here, the trustee identified a foreclosure of a senior lien held by appellee CorePointe Financial on the properties as the qualifying "legal or equitable proceeding." The bankruptcy court accepted this argument, finding that such a foreclosure satisfied the criteria of § 363(f)(5).

In reaching this conclusion, the bankruptcy court made two findings.[4] First, the bankruptcy court found that, as a general matter, foreclosures can qualify as "legal or equitable" proceedings under § 363(f)(5). The bankruptcy court cited two cases for this proposition. In re Jolan, Inc., 403 B.R. 866 (Bankr. W.D. Wash. 2009), concerned a bankruptcy trustee's efforts to use § 363(f)(5) to sell personal property free and clear of a

---

[3] Although "it must be conceded that BAP decisions cannot bind the district courts themselves," Bank of Maui v. Estate Analysis, Inc., 904 F.2d 470, 472 (9th Cir. 1990), the Court "treat[s] the BAP's decisions as persuasive authority given its special expertise in bankruptcy issues and to promote uniformity of bankruptcy law throughout the Ninth Circuit." In re Silverman, 616 F.3d 1001, 1005 (9th Cir. 2010).

[4] Because appellees' arguments largely track the approach adopted by the bankruptcy court, the Court does not separately address those arguments except as otherwise noted herein.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**                                           JS-6

| Case No. | 2:13-cv-07532-CAS; consolidated with 2:13-cv-07200-CAS | Date | November 25, 2013 |
|----------|--------------------------------------------------------|------|-------------------|

| Title | IN RE: HASSEN IMPORTS PARTNERSHIP |
|-------|-----------------------------------|

junior lien.  The Jolan court noted in dicta that "were the trustee proposing to sell real property, judicial and nonjudicial foreclosures . . . operate to clear junior lienholders' interests, and their liens attach to proceeds in excess of the costs of sale and the obligation or judgment foreclosed."  As such, Jolan reasoned, "[b]ecause there are in Washington legal and equitable proceedings by which lienholders may be compelled to accept money satisfactions, § 363(f)(5) here permits a sale free and clear of liens . . . ."  Id.  Similarly, In re Boston Generating, LLC, 440 B.R. 302 (Bankr. S.D.N.Y. 2010), cited Jolan for the proposition that "the existence of judicial and nonjudicial foreclosure and enforcement actions under state law can satisfy section 363(f)(5)."  Id. at 333.

Second, the bankruptcy court noted that, under California law, a foreclosure on a senior lien interest extinguishes junior covenants and equitable servitudes.  See Sumitomo Bank v. Davis, 4 Cal. App. 4th 1306, 1314 (1992) ("What is sold by judicial foreclosure is the property owner's interest in the property at the time of the mortgage or deed of trust being foreclosed."); Sain v. Silvestre, 78 Cal. App. 3d 461, 473 (Ct. App. 1978); Restatement (Third) of Property (Servitudes) § 7.9 (2000) ("A servitude is not extinguished by foreclosure of a lien against the estate burdened by the servitude unless the lien has priority over the servitude.").

The bankruptcy court combined these two propositions—(1) foreclosures qualify under § 363(f)(5) and (2) foreclosures extinguish junior interests—to conclude that a foreclosure on a senior lien that extinguishes a junior servitude qualifies as a "legal or equitable proceeding" under § 363(f)(5).  In this regard, the bankruptcy court found that the Operating Covenant was junior to the lien owned by CorePointe, which was recorded on July 29, 1999.[5]  See JA 2383.  Because a foreclosure on the CorePointe lien would extinguish the junior Operating Covenant, the bankruptcy court reasoned that such a foreclosure qualified as an eligible proceeding under § 363(f)(5).  As such, the bankruptcy court concluded that the trustee was entitled to sell the properties free and clear of the Operating Covenant.

---

[5] The City contests this factual finding, arguing that the Operating Covenant is senior to the CorePointe lien.  Because the Court concludes that a hypothetical foreclosure on the CorePointe lien would not qualify under § 363(f)(5) even if the CorePointe lien is senior, the Court does not reach the City's argument on this issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**                                              JS-6

| Case No. | 2:13-cv-07532-CAS; consolidated with 2:13-cv-07200-CAS | Date | November 25, 2013 |
|---|---|---|---|
| Title | IN RE: HASSEN IMPORTS PARTNERSHIP | | |

The City objects to this conclusion on the grounds that, in the hypothetical foreclosure identified by the bankruptcy court, the city would not receive a "money satisfaction" of its interest as required by § 363(f)(5).  In the event of a foreclosure on the senior CorePointe lien, the City receives nothing—"money" or otherwise— in exchange for the Operating Covenant.  Instead, the sale simply terminates the Operating Covenant.  Because the hypothetical foreclosure on the CorePointe lien does not give the City anything of value, the City argues such a foreclosure would not "compel[]" the City "to accept a money satisfaction of" the Operating Covenant, and thus does not qualify under § 363(f)(5).

The Court agrees.  By its terms, § 363(f)(5) only authorizes sale free and clear of an interest when there is a proceeding that would compel a "money satisfaction" of that interest.  Accordingly, "[a] determination of how 'money satisfaction' is interpreted will determine whether Subsection (f)(5) applies." In re Heine, 141 B.R. 185, 189 (Bankr. D.S.D. 1992).  "[W]here . . . the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241 (1989) (quoting Caminetti v. United States, 242 U.S. 470, 485(1917)). Here, the word  "satisfaction"—at least when used in the context of "satisfaction of [an] interest"—connotes giving something of value in exchange for terminating an outstanding obligation.  Black's Law Dictionary, for example, defines satisfaction as the "giving of something with the intention, express or implied, that it is to extinguish existing legal or moral obligation." Black's Law Dictionary 1460 (9th ed. 2009).

Other provisions of the Bankruptcy Code corroborate that "satisfaction" refers to giving something of value in exchange for extinguishing an obligation. Cf. Rousey v. Jacoway, 544 U.S. 320, 326 (2005) (construing term by reference to the use of the term "elsewhere within the Bankruptcy Code").  11 U.S.C. § 550(d), for instance, limits the trustee to "only a single satisfaction under subsection (a) of this section."  Subsection (a), in turn, refers to the trustee "recover[ing] for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property."  "Satisfaction," as used in § 550, thus refers to a recovery of property or the value of that property.   Conversely, the Bankruptcy Code does not use the word "satisfaction" when referring to the straightforward termination of an interest. § 363(f)(1) permits sale free and clear of an interest where "applicable nonbankruptcy law permits sale of such property free and clear of such interest."  Congress, however, did not write subsection (f)(5) to allow a sale free

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**                                    **JS-6**

| Case No. | 2:13-cv-07532-CAS; consolidated with 2:13-cv-07200-CAS | Date | November 25, 2013 |
|----------|----------------|------|-------------------|

| Title | IN RE: HASSEN IMPORTS PARTNERSHIP |
|-------|-----------------------------------|

and clear whenever an "entity could be compelled, in a legal or equitable proceeding, to accept a sale free and clear of such interest."  Indeed, if Congress had written subsection (f)(5) this way, it may well have been redundant of subsection (f)(1).  See Duncan v. Walker, 533 U.S. 167, 168 (2001) (explaining that the "duty to give effect, where possible, to every word of a statute makes the Court reluctant to treat statutory terms as surplusage.").

Here, § 363(f)(5) modifies "satisfaction" with the word "money."  Applying the definition cited above from Black's Law Dictionary, this Court therefore reads the phrase "money satisfaction" to refer to the "giving of money with the intention that it is to extinguish existing legal or moral obligation."  Cf. Black's Law Dictionary 1460 (9th ed. 2009); see also Collier on Bankruptcy ¶ 363.06[6] ("[Section 363(f)(5)] generally means that if, under applicable law, the holder of the lien or interest could be compelled to accept a payment in exchange for its interest, the trustee may take advantage of that right by replacing the holder's lien or interest with a payment or other adequate protection.").  In a hypothetical foreclosure on the senior CorePointe lien, the City does not receive money in exchange for extinguishing the Operating Covenant.  Instead, "[t]he foreclosure sale eliminates or 'wipes out' all interests that were junior in priority" to the CorePointe lien. Miller & Starr, 5 Cal. Real Est. § 11:100 (3d ed.).  As such, the foreclosure would not compel the City to accept a "money satisfaction" of the Operating Covenant, and thus does not constitute a "legal or equitable proceeding" pursuant to § 363(f)(5).

Other cases applying § 363(f)(5) confirm that the subsection only authorizes sale free and clear when money payment is given in exchange for the extinguished interest.  In re PW, for example, states in dicta that "if the interest is such that it may be vindicated only by compelling or restraining some action, it does not qualify under . . . § 363(f)(5), and the estate cannot sell free and clear of that interest." In re PW, LLC, 391 B.R. at 44 n.22; cf. Collier on Bankruptcy ¶ 363.06[6] ("In some cases, the trustee will simply be unable to sell property free of an interest protected by applicable nonbankruptcy law.") In re PW further notes that the need for money satisfaction "leads to a relatively small role for [subsection] (5)." Id. at 43.  This small role, however, does not write § 363(f)(5) "out of the Code" because it "remains one of five different justifications for selling free and clear of interests, and its scope need not be expansive or all-encompassing." Id.

**CIVIL MINUTES - GENERAL**                     **JS-6**

| Case No. | 2:13-cv-07532-CAS; consolidated with 2:13-cv-07200-CAS | Date | November 25, 2013 |
|---|---|---|---|
| Title | IN RE: HASSEN IMPORTS PARTNERSHIP | | |

In re PW, in turn, cites the Seventh Circuit case Gouveia v. Tazbir, 37 F.3d 295 (7th Cir. 1994).  In Gouveia, the court found that § 363(f)(5) did not authorize a sale free and clear of a restrictive use covenant because the holders of the covenant could not be "forced to accept money damages in lieu of equitable relief."  Id. at 299.  Appellees attempt to distinguish Gouveia as pertaining only to covenants restricting the available uses of the property.  Here, appellees argue that the properties will not be sold free and clear of the "Use Covenant" requiring the properties to be used as automobile dealerships; accordingly, appellees reason, Gouveia is satisfied.  The Court finds this argument unpersuasive.  Gouveia did not turn on the substance of the restrictive covenant, but instead on whether the covenant was, as the Seventh Circuit termed it, "cash convertible."[6]

---

[6] Appellee's reliance on In re Signature Developments, Inc., 348 B.R. 758 (Bankr. E.D. Mich. 2006), is similarly misplaced.  In Signature Developments, the trustee sought to sell property free and clear of a covenant governing the construction of buildings on the property.  The bankruptcy court found that the covenant was "more in the nature of a potential construction contract between an owner and the developer's successor, which while cast in the form of a property restriction, nevertheless easily lends itself, if breached, to monetary remedies."  Id. at 767.  Because a breach of the covenant was capable of a monetary remedy, the bankruptcy court found that it was susceptible of a monetary remedy, and thus authorized a sale free and clear pursuant to § 363(f)(5).  The court specifically distinguished Gouveia on the grounds that, in that case, "the limitation to residential use, can really only be appropriately protected and enforced by classic injunctive equitable relief."  Id.

Here, it does not appear that the Operating Covenant was "in the nature of a potential construction contract" susceptible of monetary remedies.  In particular, appellees have not identified what the measure of damages would be for the breach of the Operating Covenant.  See id. ("[The owner of the covenant is] entitled to damages, the primary measure of which would be the profit the contractor would have earned on the job had he been allowed to perform under the contract.  That damages are sufficiently readily enough calculable is reinforced by the ability of the parties . . . to have allocated a specific sum and value to the [covenant].").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**                                  **JS-6**

| Case No. | 2:13-cv-07532-CAS; consolidated with 2:13-cv-07200-CAS | Date | November 25, 2013 |
|----------|--------------------------------------------------------|------|-------------------|
| Title | IN RE: HASSEN IMPORTS PARTNERSHIP | | |

Id.; see also In re WBQ P'ship, 189 B.R. 97, 106 (Bankr. E.D. Va. 1995) ("[Section] 363(f)(5) specifies a money satisfaction, which suggests that the interest must be reducible to a claim."); In re Beker Indus. Corp., 63 B.R. 474, 478 (Bankr. S.D.N.Y. 1986) ("Rather, § 363(f)(5) is to be interpreted, in our judgment, as referring to those few interests in property that can, by operation of law, be reduced to dollars.").

The reasoning employed by In re Jolan, Inc. and In re Boston Generating, LLC—the two cases cited by both appellees and the bankruptcy court for the proposition that foreclosures are "legal or equitable proceedings" under § 363(f)(5)—also demonstrates that § 363(f)(5) requires monetary satisfaction even in the context of foreclosures.  Both cases discussed using § 363(f)(5) to strip junior liens via the hypothetical foreclosure of a senior lien.  In these hypothetical foreclosures, the junior lienholder would lose their lien on the foreclosed property, and receive in exchange a lien attaching to the proceeds from the foreclosure sale.  See Miller & Starr, 5 Cal. Real Est. § 11:100 (3d ed.) ("A foreclosure sale of a senior deed of trust eliminates the liens of junior lienors, but the junior liens attach to any surplus sales proceeds that must be paid to the junior lienors.").

It is this lien on the monetary proceeds from the foreclosure sale which the Jolan and Boston Generating courts found to be the "money satisfaction" received by junior interests.  Jolan identified foreclosure as a proceeding "by which lienholders may be compelled to accept money satisfactions" because "foreclosures . . . operate to clear junior lienholders' interests, [with] their liens attach[ing] to proceeds in excess of the costs of sale and the obligation or judgment foreclosed."  403 B.R. at 870.  Likewise, Boston Generating found that "a junior lienholder . . . is entitled to nothing more than the surplus cash generated in a sale" and that the junior lienholders could thus be "compelled under state law to accept general unsecured claims to the extent the sale proceeds are not sufficient to pay their claims in full."  440 B.R. at 333 & n.29.  Jolan and Boston Generating thus both turn on the fact that junior lienholders can be compelled to receive an entitlement to the proceeds of a foreclosure sale in exchange for their junior liens.  The City, by contrast, would receive no such satisfaction of the Operating Covenant under a foreclosure of the CorePointe lien, because, as stated above, such a foreclosure would simply terminate the Operating Covenant.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

| | **CIVIL MINUTES - GENERAL** | | | **JS-6** |
|---|---|---|---|---|
| Case No. | 2:13-cv-07532-CAS; consolidated with 2:13-cv-07200-CAS | Date | November 25, 2013 | |
| Title | IN RE: HASSEN IMPORTS PARTNERSHIP | | | |

Accordingly, the Court finds that a hypothetical foreclosure on the CorePointe lien does not qualify as a "legal and equitable" proceeding compelling the City to accept a money satisfaction of the Operating Covenant.  As such, the trustee cannot invoke the hypothetical foreclosure to justify  a sale free and clear of the Operating Covenant under § 363(f)(5).[7]  The Court emphasizes the narrowness of this conclusion.  The Court does not find that the trustee is conclusively barred from selling the properties to Dighton.  Nor does the Court find that the trustee can never invoke § 363(f)(5) to sell the properties free and clear of the Operating Covenant.  Instead, the Court concludes only that the trustee has not identified a "legal or equitable proceeding" that would "compel[]" the City to "accept a money satisfaction" of the equitable servitude created by the Operating Covenant.

## IV. CONCLUSION

In accordance with the foregoing, the Court hereby REVERSES the sale order and remands for further proceedings consistent with this order.

IT IS SO ORDERED.

| | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |

_____

[7] Appellees also suggest that a hypothetical tax lien sale could qualify as a "legal or equitable" proceeding under § 363(f)(5).  Tax liens have priority over all other liens under Cal. Rev. & Tax. Code § 2192.1; a foreclosure on the tax lien thus eliminates junior liens.  Setting to one side the question of whether § 2192.1 gives tax liens priority over non-lien interests, this proposed proceeding suffers from the same defect as a hypothetical foreclosure on the CorePointe lien: foreclosing on a tax lien may extinguish the Operating Covenant, but it would not give a "money satisfaction" of the Operating Covenant.